# EXHIBIT A

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**

| | |
|---|---|
| SHELLY LOCKETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No.: 2116-CV11792 |
| | ) |
| JAMES RIVER INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT JAMES RIVER INSURANCE COMPANY'S
## NOTICE TO PLAINTIFF OF REMOVAL TO FEDERAL COURT

To:     Shelly Lockett
c/o Frederick W. Bryant
The Bryant Law Firm
1 Town Square
North Kansas City, MO 64116

You are hereby notified that on July 19, 2021, Defendant James River Insurance Company removed this case to the United States District Court for the Western District of Missouri pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. A copy of the notice of removal is attached hereto as Exhibit 1.

Respectfully submitted,

BAKER STERCHI COWDEN & RICE, L.L.C.

By: */s/ Richard I. Woolf* _____
Richard I. Woolf, Esq.     MO #58146
100 N. Broadway, 21st Floor
St. Louis, MO 63102
Telephone:     (314) 345-5000
Facsimile:     (314) 345-5055
rwoolf@bscr-law.com

and

Brett M. Simon, Esq.     MO #68395
2400 Pershing Road, Suite 500
Kansas City, MO 64108

1

Telephone:      (816) 471-2121
Facsimile:       (816) 472-0288
bsimon@bscr-law.com

**ATTORNEYS FOR DEFENDANT JAMES
RIVER INSURANCE COMPANY**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I served the above and foregoing this 19th day of July, 2021, by filing

the same with the Clerk of Court using the electronic filing system which sent notice to all counsel

of record.

*/s/ Richard I. Woolf*

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

SHELLY LOCKETT,                              )
                                             )
                        Plaintiff,           )
                                             )
v.                                           )          Case No.: 2116-CV11792
                                             )
JAMES RIVER INSURANCE COMPANY,               )
                                             )
                        Defendant.           )

## DEFENDANT JAMES RIVER INSURANCE COMPANY'S
## NOTICE TO STATE COURT OF REMOVAL TO FEDERAL COURT

You are hereby notified that on July 19, 2021, Defendant James River Insurance Company

removed this case to the United States District Court for the Western District of Missouri pursuant

to 28 U.S.C. §§ 1332, 1441, and 1446. A copy of the notice of removal is attached hereto as Exhibit

1.

Respectfully submitted,

BAKER STERCHI COWDEN & RICE, L.L.C.

By: */s/ Richard I. Woolf*
Richard I. Woolf, Esq.     MO #58146
100 N. Broadway, 21st Floor
St. Louis, MO 63102
Telephone:     (314) 345-5000
Facsimile:     (314) 345-5055
rwoolf@bscr-law.com

and

Brett M. Simon, Esq.     MO #68395
2400 Pershing Road, Suite 500
Kansas City, MO  64108
Telephone:     (816) 471-2121
Facsimile:     (816) 472-0288
bsimon@bscr-law.com

**ATTORNEYS FOR DEFENDANT JAMES
RIVER INSURANCE COMPANY**

1

**CERTIFICATE OF SERVICE**

I hereby certify that I served the above and foregoing this 19th day of July, 2021, by filing the same with the Clerk of Court using the electronic filing system which sent notice to all counsel of record.

*/s/ Richard I. Woolf* _____

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY, MISSOURI**

| | | |
|---|---|---|
| **SHELLY LOCKETT,** | ) | |
| 2212 S.W. Morris | ) | |
| Lee's Summit, MO. 64082 | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | CASE NO. |
| | ) | |
| **JAMES RIVER INSURANCE COMPANY** | ) | DIVISION |
| **SERVE:** | ) | |
| **Director, Department of Insurance** | ) | |
| **301 W. High Street, Room 530** | ) | |
| **Jefferson City, MO. 65101** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PETITION FOR DAMAGES
### (CE)

COMES NOW the Plaintiff Shelly Lockett, by and through her attorney Frederick W. Bryant, and for her cause of action herein states and alleges as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

(1)

Plaintiff is a resident of Lee's Summit, Jackson County, Missouri.

(2)

Defendant James River Insurance Company (hereinafter "James River") was and is an Ohio corporation licensed to do business in the State of Missouri. At all times material to this Petition, defendant James River was and is licensed to sell insurance in the State of Missouri.

(3)

The defendant, James River was and is licensed to sell insurance in Missouri and it contracted to insure risks located within the State of Missouri and is therefore, subject to personal

jurisdiction before the Court pursuant to Section 506.500.1 RSMo.

(4)

Venue is proper in this Court as the collision creating Plaintiff's claim for insurance coverage for her under defendant's policy of insurance occurred in Kansas City, Jackson County, Missouri.

## COUNT I. UNDERINSURED MOTORIST CLAIM
## DEFENDANT JAMES RIVER INSURANCE

For Count I of her cause of action against Defendant James River, Plaintiff adopts by reference the allegations contained in paragraphs 1 through 4 of her Petition for Damages.

(5)

At all relevant times herein, defendant James River issued a policy of automobile insurance to Rasier LLC, Rasier-CA LLC, Raider-DC LLC and Rasier -PA LLC (collectively doing business as "Uber") in the State of Missouri under policy number CA436100MO-01) with a coverage period of March 1, 2016 through March 1, 2017 (hereinafter the "James River Policy"). A copy of the James River Policy is attached hereto and incorporated herein by reference as *Exhibit 1*.

(6)

The automobile insurance policy defendant James River provided to Rasier LLC, Rasier-CA LLC, Raider-DC LLC and Rasier -PA LLC (collectively doing business as "Uber") under policy number CA436100MO-01 was in full force and effect at all times alleged herein to include September 24, 2016, the time and place of the collision creating Plaintiff's claim for insurance coverage, which is hereinafter mentioned.

2

(7)

The James River Policy under the "Covered Auto Designation Symbol" endorsement on page 1 of the policy provided coverage for:

Any passenger "auto" while being used by a "Rideshare Driver", in connection with the "UberPartner application" accessed using account credentials issued under a contract with a Named Insured, provided any of the following:

a. The "Rideshare Driver" has logged and recorded acceptance in the "UberPartner application" of a request to provide transportation services, and the "Rideshare Driver" is:

1) En route to the pick-up location of the requested transportation services including, but not limited to, picking up of passenger(s); or

2) Traveling to the final destination of the requested transportation services including, but not limited to, dropping-off of passenger(s).

b. The "Rideshare Driver" has logged and recorded acceptance in the "UberPartner Application" to provide transportation services and the "Rideshare Driver" is:

1) Located on a public airport premises during the course of the accepted Transportation services including the picking-up and dropping-off of passenger(s); or

2) Located on a public airport premises immediately following the conclusion of the requested transportation services and while in the course of exiting the public airport premises.

c. The "Rideshare Driver" has logged into the "UberPartner application" and is available to receive requests" for transportation services from TNC application users and "Rideshare Driver" is located on a public airport premises. "Available to receive requests" means the "UberPartner application" is in a state such that an applicable request would be transmitted to the "Rideshare Driver's" "UberPartner application" account for acceptance by the "Rideshare Driver".

(8)

At all relevant times herein, Plaintiff Shelly Lockett as an Uber Rideshare Driver was operating her motor vehicle (a passenger auto) in connection with the use of the "UberPartner application" in Missouri using account credentials issued under a contract with Raiser LLC, a Named Insured under the James River Policy.

(9)

3

At all relevant times herein, Plaintiff Shelly Lockett had logged and recorded acceptance in the "UberPartner application" of a request to provide transportation services, and she was traveling to the final destination of the requested transportation services including, but not limited to, dropping-off of her passenger.

(10)

Plaintiff was operating a covered "auto" under the James River Policy at the time of the incident more fully set forth herein.

(11)

The James River Policy contains a Missouri Underinsured Motorists Coverage ("UIM") endorsement, effective March 1, 2016, which provides in pertinent part:

A.   **Coverage**
    1.    We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle".
    2.    We will pay under this coverage only if Paragraph a. or b. below applies:
        a.    The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or
        b.    A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle", and we:
            (1)    Have been given prompt written notice of such tentative settlement; and
            (2)    Advance payment to the "insured" in an amount equal to the tentative settlement with 30 days after receipt of notification.
    3.    Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

B.   **Who Is An Insured**
If the Named Insured is designated in the Declaration as:
    1.    An individual, then the following are "insureds":

4

a.  The Named Insured and any "family members". However, this does not include any "family member", other than the Named Insured's spouse, who owns an "auto".

b.  Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

c.  Anyone for damages he or she is entitled to recover because of 'bodily injury" sustained by another "insured".

2.  A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

a.  Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b.  Anyone for damages he or she is entitle to recover because of "bodily injury" sustained by another "insured".

(12)

The James River Policy provided to Underinsured Motorists coverage ("UIM") with a limit of One Million Dollars ($1,000,000.00) for each accident.

(13)

The UIM endorsement, page 4, under the James River Policy defines "Occupying" as "in, upon, getting in, on, out or off."

(14)

At all relevant times herein, Plaintiff Shelly Lockett was "occupying" a covered "auto" and was therefore an "insured" under the UIM endorsement of the James River Policy.

(15)

The James River Policy's UIM endorsement defines "underinsured motor vehicle" as:

3.  "Underinsured motor vehicle" means a land motor vehicle or "trailer" for which a "bodily injury" liability bond or policy applies at the time of an "accident", but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled

5

to recover as damages.

(16)

On September 24, 2016 Plaintiff was operating her vehicle as an Uber Rideshare driver with a paying customer, and while pulled off the road and onto the shoulder of Interstate 435 westbound (hereinafter I-435) near 103rd Street in Kansas City, Jackson County, Missouri Because her passenger became ill, Plaintiff's vehicle was rear-ended by a vehicle traveling at a high rate of speed operated by a vehicle being operated by Alannis Bremer.

(17)

As a result of the collision, Plaintiff sustained the injuries specified hereinafter and Plaintiff's paying customer was killed.

(18)

Plaintiff alleges Interstate 435 (hereinafter I-435) where the collision occurred is a public street and thoroughfare in Kansas City, Jackson County, Missouri.

(19)

Plaintiff further alleges Alannis Bremer was careless and negligent in the aforesaid time and place in the following respects, to-wit:

a. In failing to keep a careful and vigilant look out ahead and laterally for traffic on said street;

b. In failing to exercise the highest degree of care to keep said vehicle under such control as to be able to stop same or sufficiently slacken the speed thereof on appearance of danger;

c. In failing to stop said vehicle or slacken the speed thereof in time to avoid the aforementioned collision;

6

d.      In failing to change the course of said vehicle in order to avoid said collision;

e.      In failing to allow adequate time, distance and space to stop his vehicle before colliding into the rear of the vehicle being driven by Plaintiff.

f.      In consuming excessive quantities of intoxicating liquors and alcoholic beverages which caused her to be in an intoxicated condition effecting her ability to drive and operate a motor vehicle thus causing her to collide with Plaintiff's vehicle.;

g.      In  consuming an excessive quantity of intoxicating liquors and alcoholic beverages when in the exercise of the highest degree of care she knew or should have known that the consumption of such liquors and alcohol would cause her to become intoxicated and would affect her ability to drive a motor vehicle and could cause injuries to others including the Plaintiff.

h.      By reason of her intoxication at the time of the collision, failing to keep a careful and vigilant lookout ahead and laterally for the traffic on said street.

i.      By reason of her intoxication at the time of this collision, failing to exercise the highest degree of care to keep said vehicle under such control as to be able to stop same or sufficiently slacken the speed thereof on appearance of danger;

j.      By reason of said intoxication at the time of this collision, failing to stop said vehicle or slacken the speed thereof in time to avoid the aforementioned collision;

k.      By reason of said intoxication at the time of this collision, failing to change the course of said vehicle in order to avoid said collision;

l.      By reason of said intoxication at the time of this collision, operating said vehicle at a high dangerous and excessive rate of speed under the circumstances then and

7

there existing;

(20)

The negligence and carelessness of defendant Bremer in the operation of her vehicle on September 24th, 2016 by colliding into the vehicle Plaintiff was operating directly caused or directly contributed to cause the Plaintiff to sustain the following injuries, to-wit:

(a) Knee pain/contusion from dash;

(b) Back pain;

(c) Post- traumatic stress disorder (PTSD);

(d) Major depressive disorder;

(e) Chronic pain disorder;

(f) Somatic Symptom Disorder with predominant pain;

(g) Acute Anxiety/depression following MVC;

(h) Frequent and severe headaches;

(i) Right arm and grip weakness;

(j) Severe pain right trapezius;

(k) Sleep disturbance;

(l) Cervical radiculopathy;

(m) Foraminal disk C5/C6 with C6 radiculopathy;

(n) Acute right cervical radiculopathy;

(o) Right foraminal disk herniation resulting in advanced right foraminal stenosis;

(p) Lumbar radiculopathy;

8

(q)     Acute stress disorder;

(r)     Global assessment function 50 with serious impairment in social, occupational and school functioning;

(s)     High anxiety with panic attacks;

(t)     Poor concentration;

(21)

Plaintiff has been forced to expend money for physicians, medicines, and medical procedures for past and present treatment of her physical and mental and emotional injuries sustained due to the vehicular crash of September 24th, 2016.

(22)

Plaintiff will incur expenses in the future for continued treatment of her physical and mental and emotional injuries sustained due to the vehicular crash of September 24th, 2016.

(23)

Plaintiff was off work due to her injuries and lost time and past and present earnings.

(24)

Plaintiff's will sustain future wage loss as her ability to work has been affected by these injuries and she is no longer is able to carry out the physical and metal requirements necessary to find and keep employment in the open labor market;

(25)

Plaintiff has suffered permanent physical, mental and emotional injury and in the future will continue to suffer pain and anguish both to body and mind.

(26)

9

The Plaintiff further states that Alannis Bremer was insured by a policy of liability insurance issued by Auto Owners Insurance with total limits of $250,000.00 and defendant Bremer had no other policies of automobile liability insurance other than the Auto Owners policy.

(27)

Auto Owners Insurance paid the full amount of its policy limits of $250,000.00 on behalf of its insured Alannis Bremer to the Plaintiff.

(28)

The limit of Alannis Bremer's automobile liability was insufficient to compensate Plaintiff for the full amount of her past present and future damages suffered from the loss described herein and therefore the defendant Alannis Bremer was was operating an underinsured motor vehicle and was an underinsured motorist under definitions of the James River Policy.

(29)

The defendant James River Policy under which Plaintiff was an "insured", contained Underinsured Motorist (UIM) coverage which provides defendant James River would pay damages to which an insured is legally entitled to recover from the owner or operator of an underinsured automobile because of bodily injuries sustained by the insured.

(30)

The Plaintiff has complied with every term, stipulation and condition required of her under the provisions of defendant James River policy to enable her to collect "Underinsured Coverage" benefits from said policy and has demanded payment from defendant James River but defendant James River has refused to pay.

10

WHEREFORE, Plaintiff prays judgment against the Defendant James River in Count I for such damages as are fair and reasonable to compensate her for her loss, together, with his costs herein incurred and expended for which she is entitled pursuant to the underinsured motorist coverage provided; and for such other relief as the Court deems just and proper.

## COUNT II – VEXATIOUS REFUSAL TO PAY BY DEFENDANT JAMES RIVER INSURANCE

(31)

COMES NOW Plaintiff Shelly Lockett and, for Count II of her cause of action against Defendant James River, adopts by reference the allegations contained in paragraphs 1 through 30 of her Petition for Damages.

(32)

Plaintiff made demand upon defendant James River for the UIM limits available under the James River policy.

(33)

To date, defendant James River has failed and refused to satisfy the claim made under the above-referenced policy.

(34)

Defendant James River has refused to pay the loss of Plaintiff without reasonable cause and excuse and such refusal constitutes vexatious refusal to pay a valid claim pursuant to RSMo. § 375.420.

(35)

Plaintiff has been damaged as a result of Defendant James River's vexatious refusal to pay

11

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

the monies due Plaintiff under the James River Policy.

(36)

As such, Plaintiff Shelly Lockett makes a claim for an additional damages as a penalty not to exceed twenty percent of the first $1,500.00 of the loss and ten percent of the remainder of such award and an award to Plaintiff of a reasonable sum for attorney's fees pursuant to RSMo. § 375.420.

WHEREFORE, Plaintiff Shelly Lockett prays in Count II for judgment against Defendant James River all additional damages for vexatious refusal as articulated in RSMo. § 375.420, to include an amount as a penalty not to exceed twenty percent of the first $1,500.00 of the award on the policy not including interest and ten percent of the remainder of such award and for an award to Plaintiff of a reasonable sum for attorney's fees, for Plaintiff's costs incurred and expended herein, and for such other and further relief deemed appropriate under the circumstances.

THE BRYANT LAW FIRM

FREDERICK W. BRYANT     MBA# 30535
1 Town Square
North Kansas City, Missouri 64116
Phone: (816) 221-0350
Fax:    (816) 221-0232
fred@bryantlawkc.com

ATTORNEYS FOR PLAINTIFF

12

# BUSINESS AUTO DECLARATIONS 2116-CV11792



**JAMES RIVER INSURANCE COMPANY**
6641 WEST BROAD STREET
SUITE 300
RICHMOND, VA 23230

**JAMES RIVER INSURANCE**

**Policy Number: CA436100MO-01**

## ITEM ONE

| | | | |
|---|---|---|---|
| **Named Insured:** | Rasier LLC, Rasier-CA LLC, Rasier-DC LLC. and Rasier-PA LLC | **Mailing Address:** | 1455 Market Street, 4th Floor San Francisco, CA 94103 |

**Policy Period:**

**From:** 3/1/2016

**To:** 3/1/2017 At 12:01 AM Standard Time at your mailing address shown above

**Form Of Business:**

| | | |
|---|---|---|
| [ ] Corporation | [X] Limited Liability Company | [ ] Individual |
| [ ] Partnership | [ ] Other: | |

**Premium shown is payable at inception:** ▆▆▆▆▆

**Audit Period** (If Applicable): [ ] Annually [ ] Semiannually [ ] Quarterly [X] Monthly

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS IN THE APPLICATION(S) AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

## ITEM TWO
### Schedule of Coverages and Covered Autos

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.

| Coverages | Covered Autos (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which "autos" are covered "autos") | Limit The Most We Will Pay for Any One Accident or Loss | Premium |
|---|---|---|---|
| Liability | 10 | $ 1,000,000 | ▆▆▆ |
| Personal Injury Protection (Or Equivalent No-fault Coverage) | 10 | Separately Stated In Each Personal Injury Protection Endorsement | ▆▆▆ |
| Uninsured Motorists (UM) | 10 | $ 1,000,000 | ▆▆▆ |
| Underinsured Motorists (UIM) (When Not Included in UM Coverage) | 10 | $ 1,000,000 | ▆▆▆ |
| **Physical Damage** | | | |
| Physical Damage Comprehensive Coverage | Not Covered | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $ Deductible For Each Covered Auto, But No Deductible Applies to Loss Caused By Fire or Lightning | $ Not Covered |
| Physical Damage Specified Causes of Loss Coverage | Not Covered | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $ Deductible For Each Covered Auto, for Loss Caused By Mischief or Vandalism | $ Not Covered |

*— PETITION EXHIBIT I*

Philip S Hagan License #348776

This is evidence of insurance procured and developed under the Missouri Surplus Lines Laws. It is NOT covered by the Missouri Guaranty Association. The insurer is not licensed by the state of Missouri and is not subject to its supervision.

| Physical Damage Collision Coverage | Not Covered | Actual Cash Value or Cost of Repair, Whichever is Less, Minus $ Deductible For Each Covered Auto | $ Not Covered |
|---|---|---|---|

**ITEM THREE – Specifically Described Autos – Physical Damage**

Vehicles described below are covered "autos" but only for the Physical Damage Coverage where a premium is shown on the Declarations and only for the Limit(s) designated in the Declarations for such premium charge.

None

| | Premium From Endorsements |
|---|---|
| | Estimated Total Premium |
| | Company Fee |

TOTAL SHOWN IS PAYABLE AT INCEPTION

| Surplus Lines Tax | |
|---|---|
| Stamping Office Tax | |
| Total Premium | |

| ENDORSEMENTS |
|---|
| ENDORSEMENTS ATTACHED TO THIS POLICY: |
| See attached schedule A – Schedule of Forms |

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.

# SCHEDULE A REVISED

FORMS AND ENDORSEMENTS THAT APPLY TO THIS POLICY:

**POLICY NO.   CA436100MO-01**

**FORM NUMBER        TITLE**

| | |
|---|---|
| **Mandatory Forms** | |
| JA2003US 12 14 | **Business Auto Declarations** |
| JA0001US 10 14 | **Business Auto – Schedule A** |
| CA  00  01 10 13 | **Business Auto Coverage Form** |
| JA5401US 03 13 | **Common Policy Conditions** |
| JA5404US 10 14 | **Premium Audit Conditions Amended** |
| IL  00  21  09 08 | **Nuclear Energy Liability Exclusion** |
| CA  23 84  10 13 | **Exclusion - Terrorism** |
| **ISO Forms** | |
| CA9954 10 13  Covered Auto Symbols | |
| | |
| | |
| **Additional Interests & Waiver of Subrogation** | |
| JA5206US 12-14  Additional Insured – Government Entities by Contract | |
| JA5201US 12-14  Additional Insured Endorsement - Uber | |
| JA5201US 10 14 Additional Insured – Scheduled – City of Kansas City | |
| JA5201US 10 14 Additional Insured – Scheduled – City of Columbia | |
| **Limitations** | |
| JA5307US 12-14 Limitation of Coverage to State – Rides Originating | |
| | |
| **Exclusions** | |
| JA5608US 02-16 Exclusion of Liability – Other Commercial Auto Insurance Policies | |
| | |
| **State Mandatory Forms** | |
| CA0165 10-13  Missouri Changes | |
| | |
| **UM/UIM/PIP Forms** | |
| CA2104 10 13 Missouri Uninsured Motorists Coverage | |
| | |
| **Other Forms** | |
| JA5309US 02-16  Transportation Network Company, Transportation Network Partner, Rideshare Driver Endorsement | |
| AP1015US 03-06 Cancellation and Non Renewal Notice to Third Party- City of Kansas City | |
| AP1015US 03-06 Cancellation and Non Renewal Notice to Third Party-City of Columbia | |
| Endorsement 1 – Removes PIP and UIM from Declarations | |
| Endorsement 2 – Adding CA3104 10 13 Missouri Underinsured Motorists Coverage | |

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

### A. Description Of Covered Auto Designation Symbols

| Symbol | Description Of Covered Auto Designation Symbols | |
|--------|------|------|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5** | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

© Insurance Services Office, Inc., 2011

Case 4:21-cv-00507-BP   Document 1-1   Filed 07/19/21   Page 21 of 69

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments and settlements.

**1. Who Is An Insured**

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   **(1)** The owner or anyone else from whom you hire or borrow a covered "auto".

   This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

© Insurance Services Office, Inc., 2011

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

  **a. Supplementary Payments**

    We will pay for the "insured":

    (1) All expenses we incur.

    (2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

    (3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

    (4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

    (5) All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

    (6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

  **b. Out-of-state Coverage Extensions**

    While a covered "auto" is away from the state where it is licensed, we will:

    (1) Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

    (2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

    We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

  **a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

  **b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

 © Insurance Services Office, Inc., 2011

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed;

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

© Insurance Services Office, Inc., 2011

CA 00 01 10 13

Case 4:21-cv-00507-RP   Document 1-1   Filed 07/19/21   Page 24 of 69

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

 © Insurance Services Office, Inc., 2011

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   **(1)** The covered "auto's" collision with another object; or

   **(2)** The covered "auto's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by:

   **(1)** Fire, lightning or explosion;

   **(2)** Theft;

   **(3)** Windstorm, hail or earthquake;

   **(4)** Flood;

   **(5)** Mischief or vandalism; or

   **(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   **(1)** The covered "auto's" collision with another object; or

   **(2)** The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   **a.** Glass breakage;

   **b.** "Loss" caused by hitting a bird or animal; and

   **c.** "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   **a. Transportation Expenses**

   We will pay up to $20 per day, to a maximum of $600, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   **b. Loss Of Use Expenses**

   For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

   **(1)** Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

   **(2)** Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

Case 4:21-cv-00507-BP   Document 1-1   Filed 07/19/21   Page 26 of 69
© Insurance Services Office, Inc., 2011
CA 00 01 10 13

(3) Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   (1) The explosion of any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   **b. War Or Military Action**

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" due and confined to:

   a. Wear and tear, freezing, mechanical or electrical breakdown.

   b. Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

4. We will not pay for "loss" to any of the following:

   a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   b. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

   c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   d. Any accessories used with the electronic equipment described in Paragraph **c.** above.

5. Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

   a. Permanently installed in or upon the covered "auto";

   b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

   c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

   d. Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

6. We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limits Of Insurance**

1. The most we will pay for:

   a. "Loss" to any one covered "auto" is the lesser of:

   (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

   b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

   (1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

**(2)** Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

**(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment, you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

© Insurance Services Office, Inc., 2011

CA 00 01 10 13

**4. Loss Payment – Physical Damage Coverages**

At our option, we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own; or

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

 © Insurance Services Office, Inc., 2011

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico;

**(4)** Canada; and

**(5)** Anywhere in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V – DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

© Insurance Services Office, Inc., 2011

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

  **(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

  **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

  **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

  **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract" means:

  **1.** A lease of premises;

  **2.** A sidetrack agreement;

  **3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  **4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  **5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

  **6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

  **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

  **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

  **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  **2.** Vehicles maintained for use solely on or next to premises you own or rent;

  **3.** Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph **1.**, **2.**, **3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

   **1.** Damages because of "bodily injury" or "property damage"; or

   **2.** A "covered pollution cost or expense";

   to which this insurance applies, are alleged.

   "Suit" includes:

      a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

© Insurance Services Office, Inc., 2011

CA 00 01 10 13

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMON POLICY CONDITIONS

All Coverage Parts in this policy are subject to the following Conditions.

1. **CANCELLATION AND NON-RENEWAL**

    A. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    B. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    (2) 30 days before the effective date of cancellation if we cancel for any other reason.

    C. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    D. Notice of cancellation will state the effective date of cancellation. The policy will end on that date.

    E. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata unless cancellation is due to non-payment of premium, in which case the refund may be less than pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

    F. If notice is mailed, proof of mailing will be sufficient proof of notice.

    If we elect not to renew this policy, we shall mail written notice to the First Named Insured at the address shown in the Declarations. Such written notice of non-renewal shall be mailed at least 30 days prior to the end of the policy term.

2. **CHANGES**

    This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

3. **REPRESENTATIONS**

    By accepting this policy, you agree:

    A. The statements in the Declarations are accurate and complete;

    B. Those statements are based upon representations you made to us; and

    C. We have issued this policy in reliance upon your representations.

6. **SERVICE OF SUIT**

    It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

    It is further agreed that service of process in such suit may be made upon the Company's President, or his nominee, at the address shown on the Declarations page of this policy, and that in any suit instituted against any one of them upon this policy, this Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

The above-named is authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the request of the insured to give a written undertaking to the insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, this Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## 7. TERMS, CONDITIONS AND PREMIUM

On each renewal, continuation, anniversary of the effective date of the policy or on an annual basis, the Company will determine the rate and premium and/or amend the terms and conditions in accordance with the rates and rules then in effect.

## 8. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

In Witness Whereof, this Company has executed and attested these presents; but this policy shall not be valid unless signed by duly authorized representatives of this Company.

**VICE PRESIDENT**                          **PRESIDENT**

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PREMIUM AUDIT CONDITIONS AMENDED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**SECTION IV—BUSINESS AUTO CONDITIONS,** subsection **B. General Conditions**, Item 6. **Premium Audit** is replaced with the following:

**6. Premium Audit**

    **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

    **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request. We have the right, but not the obligation, to conduct a physical audit of records needed for premium computation after the expiration of this policy.

    **d.** The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the difference, if any. However, the final premium due will never be less than the estimated total premium.

    **e.** Your refusal to maintain or provide needed records, or to allow us to conduct a physical audit of needed records, will result in our developing and calculating a final audit premium based on information available to us and without your cooperation. If final premium audits calculated without your cooperation result in additional premium, you are obligated to pay such additional premium.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Case 4:21-cv-00507-BP   Document 1-1   Filed 07/19/21   Page 37 of 69

© ISO Properties, Inc., 2007

IL 00 21 09 08   □

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, is enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

    a. That involve the following or preparation for the following:

        (1) Use or threat of force or violence; or

        (2) Commission or threat of a dangerous act; or

        (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

    b. When one or both of the following apply:

        (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

B. Except with respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

CA 23 84 10 13        © Insurance Services Office, Inc., 2013        Page 1 of 3

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **B.5.** and **B.6.** are exceeded.

With respect to this exclusion, Paragraphs **B.5.** and **B.6.** describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

C. With respect to Physical Damage Coverage, Trailer Interchange Coverage, Garagekeepers Coverage, Garagekeepers Coverage – Customers' Sound Receiving Equipment or the Single Interest Automobile Physical Damage Insurance Policy, the following exclusion is added:

**Exclusion Of Terrorism**

We will not pay for any "loss", loss of use or rental reimbursement after "loss" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph **C.5.** is exceeded.

© Insurance Services Office, Inc., 2013

**CA 23 84 10 13**

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

With respect to this exclusion, Paragraph **C.5.** describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**D.** In the event of any incident of "terrorism" that is not subject to the exclusion in Paragraph **B.** or **C.,** coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

CA 23 84 10 13
© Insurance Services Office, Inc., 2013
**Page 3 of 3**

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COVERED AUTO DESIGNATION SYMBOL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

| | |
|---|---|
| **Named Insured:** | Rasier LLC, Rasier-CA LLC, Rasier-DC LLC, Rasier-PA LLC |
| **Endorsement Effective Date:** | 3/1/2016 |

**Section I – Covered Autos** in the Business Auto and Motor Carrier Coverage Forms and **Section I – Covered Autos Coverages** in the Auto Dealers Coverage Form are amended by adding the following:

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols may be used (in addition to the numerical symbols described in the Coverage Form) to describe the "autos" that may be covered "autos". The entry of one of these symbols next to a coverage on the Declarations will designate the only "autos" that are covered "autos".

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| | | For use with the Business Auto Coverage Form |
| 10 | = | Any passenger "auto" while being used by a "Rideshare Driver", in connection with the "UberPartner application" accessed using account credentials issued under a contract with a Named Insured, provided any of the following: |
| | | a. The "Rideshare Driver" has logged and recorded acceptance in the "UberPartner application" of a request to provide transportation services, and the "Rideshare Driver" is: |
| | |    1) En route to the pick-up location of the requested transportation services including, but not limited to, picking-up of passenger(s); or |
| | |    2) Traveling to the final destination of the requested transportation services including, but not limited to, dropping-off of passenger(s). |
| | | b. The "Rideshare Driver" has logged and recorded acceptance in the "UberPartner application" to provide transportation services and the "Rideshare Driver" is: |
| | |    1) Located on a public airport premises during the course of the accepted transportation services including the picking-up and dropping-off of passenger(s); or |
| | |    2) Located on a public airport premises immediately following the conclusion of the requested transportation services and while in the course of exiting the public airport premises. |
| | | c. The "Rideshare Driver" has logged into the "UberPartner application" and is "available to receive requests" for transportation services from TNC application users and "Rideshare Driver" is located on a public airport premises. |
| | | "Available to receive requests" means the "UberPartner application" is in a state such that an applicable request would be transmitted to the "Rideshare Driver's" "UberPartner application" account for acceptance by the "Rideshare Driver". |

 Case 4:21-cv-00507-BP   Document 1-1   Filed 07/19/21   Page 41 of 69 © Insurance Services Office, Inc., 2011

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

| For use with the Auto Dealers Coverage Form | | |
|---|---|---|
| **32** | = | |

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| | | For use with the Motor Carrier Coverage Form |
| **72** | = | |
| **73** | = | |

© Insurance Services Office, Inc., 2011

**CA 99 54 10 13**

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANCELLATION AND NON RENEWAL NOTICE TO THIRD PARTY

The following is added to the CANCELLATION AND NON-RENEWAL condition of this policy:

If we cancel or non-renew this policy, we will send written notice of cancellation or non-renewal to the person or organization shown in the Schedule below at the address shown below.

If the policy is being cancelled for non-payment of premium, the notice will be mailed at least 10 days before the effective date of the cancellation. If the policy is being cancelled for any other reason or non-renewed, the notice will be mailed at least 30 days before the effective date of the cancellation or non-renewal. If notice is mailed, proof of mailing will be sufficient proof of notice.

## SCHEDULE

City of Kansas City, MO
Regulated Industries Division
635 Woodland Ave, Suite 2101
Kansas City, MO 64106

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

AP1015US 03-06

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – SCHEDULED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement the provisions of the Coverage Form apply unless modified by the endorsement.

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| City of Kansas City, MO<br>Regulated Industries Division<br>635 Woodland Ave, Suite 2101<br>Kansas City, MO 64106 |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the SCHEDULE, but only with respect to their liability for "bodily injury" or "property damage" to which this insurance applies, caused in whole or in part, by:

  **1.** Your acts or omissions; or

  **2.** The acts or omissions of those acting on your behalf;

and caused by an "accident" resulting from the ownership, maintenance or use of a covered "auto".

However, the insurance afforded to such additional insured:

  **1.** Only applies to the extent permitted by law; and

  **2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by contract or agreement to provide such additional insured.

**B.** **Section III – Limits Of Insurance** is amended to add the following:

With respect to the insurance afforded to the additional insureds shown in the SCHEDULE, the following is added:

The most we will pay on behalf of the additional insured shown in the SCHEDULE is the amount of insurance:

  **1.** Required by the contract or agreement you have entered into with the additional insured; or

  **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – SCHEDULED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement the provisions of the Coverage Form apply unless modified by the endorsement.

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| City of Columbia<br>701 East Broadway<br>Columbia, MO  65201 |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the SCHEDULE, but only with respect to their liability for "bodily injury" or "property damage" to which this insurance applies, caused in whole or in part, by:

  **1.** Your acts or omissions; or

  **2.** The acts or omissions of those acting on your behalf;

and caused by an "accident" resulting from the ownership, maintenance or use of a covered "auto".

However, the insurance afforded to such additional insured:

  **1.** Only applies to the extent permitted by law; and

  **2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by contract or agreement to provide such additional insured.

**B.** **Section III – Limits Of Insurance** is amended to add the following:

With respect to the insurance afforded to the additional insureds shown in the SCHEDULE, the following is added:

The most we will pay on behalf of the additional insured shown in the SCHEDULE is the amount of insurance:

  **1.** Required by the contract or agreement you have entered into with the additional insured; or

  **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CANCELLATION AND NON RENEWAL NOTICE TO THIRD PARTY

The following is added to the CANCELLATION AND NON-RENEWAL condition of this policy:

If we cancel or non-renew this policy, we will send written notice of cancellation or non-renewal to the person or organization shown in the Schedule below at the address shown below.

If the policy is being cancelled for non-payment of premium, the notice will be mailed at least 10 days before the effective date of the cancellation.  If the policy is being cancelled for any other reason or non-renewed, the notice will be mailed at least 30 days before the effective date of the cancellation or non-renewal.  If notice is mailed, proof of mailing will be sufficient proof of notice.

### SCHEDULE

City of Columbia
701 East Broadway
Columbia, MO  65201

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

AP1015US 03-06

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – GOVERNMENT ENTITIES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

### SCHEDULE

| Name Of Additional Insured Entity(ies): |
| --- |
| **Any state, county, city or other local governmental entity or regulatory organization, and their respective employees, where required by agreement, law, ordinance or contract with a Named Insured.** |

**A.** **Section II – COVERED AUTOS LIABILITY COVERAGE, A. Coverage, 1. Who Is An Insured** is amended to include as an additional insured the entity(ies) shown in the SCHEDULE, but only with respect to their liability for "bodily injury" or "property damage" to which this insurance applies, caused in whole or in part, by:

   **1.** Your acts or omissions; or

   **2.** The acts or omissions of those acting on your behalf;

and caused by an "accident" resulting from the ownership, maintenance or use of a covered "auto".

However, the insurance afforded to such additional insured:

   **1.** Only applies to the extent permitted by law; and

   **2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by contract or agreement to provide such additional insured.

**B.** **Section II – COVERED AUTOS LIABILITY COVERAGE, C. Limit Of Insurance** is amended to add the following:

With respect to the insurance afforded to the additional insureds shown in the SCHEDULE, the following is added:

The most we will pay on behalf of the additional insured shown in the SCHEDULE is the amount of insurance:

   **1.** Required by the contract or agreement you have entered into with the additional insured; or

   **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – SCHEDULED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

### SCHEDULE

| **Name Of Additional Insured Person(s) Or Organization(s):** |
|---|
| **Uber Technologies Inc and its subsidiaries** |

**A.** **Section II – COVERED AUTOS LIABILITY COVERAGE, A. Coverage, 1. Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the SCHEDULE, but only with respect to their liability for "bodily injury" or "property damage" to which this insurance applies, caused in whole or in part, by:

    **1.** Your acts or omissions; or

    **2.** The acts or omissions of those acting on your behalf;

and caused by an "accident" resulting from the ownership, maintenance or use of a covered "auto".

However, the insurance afforded to such additional insured:

    **1.** Only applies to the extent permitted by law; and

    **2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by contract or agreement to provide such additional insured.

**B.** **Section II – COVERED AUTOS LIABILITY COVERAGE, C. Limit Of Insurance** is amended to add the following:

With respect to the insurance afforded to the additional insureds shown in the SCHEDULE, the following is added:

The most we will pay on behalf of the additional insured shown in the SCHEDULE is the amount of insurance:

    **1.** Required by the contract or agreement you have entered into with the additional insured; or

    **2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO STATE – RIDES ORIGINATING

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

**SCHEDULE**

| |
|---|
| **State Operation(s):** |
| All rides originating in the state of Missouri. A ride originates at the first pick-up location of the requested transportation services. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury" or "property damage" caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto" arising out of the operation(s) shown in the SCHEDULE above.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LIABILITY – OTHER COMMERCIAL AUTO INSURANCE POLICIES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement the provisions of the Coverage Form apply unless modified by the endorsement.

This insurance does not apply to any claim or "suit" which is covered under any other Business Auto insurance policies issued to the Named Insured as shown in the declarations or any other subsidiary of Uber Technologies Inc. by James River Insurance Company, James River Casualty Company, or any other insurer except for any:

1. Excess automobile liability policy that schedules this policy as underlying insurance; or

2. Non-liability physical automobile damage policy.

This exclusion applies to any claim or "suit" which is covered or would have been covered under the Business Auto insurance policies issued to the Named Insured as shown in the declarations or any other subsidiary of Uber Technologies Inc. by James River Insurance Company, James River Casualty Company, or any other insurer, but for the exhaustion of limits, exclusion(s), or, cancellation or expiration of such policies.

If more than one policy issued by either James River Insurance Company or James River Casualty Company provides coverage to the same "insured" in the same claim or "suit", only the policy providing the broadest coverage to the "insured" will apply to the claim or "suit".

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TRANSPORTATION NETWORK COMPANY, TRANSPORTATION NETWORK PARTNER, RIDESHARE DRIVER ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

Covered "autos" are specifically included under all coverage parts shown in the Declarations and any coverage forms for Uninsured Motorist, Underinsured Motorist, Personal Injury Protection or other endorsed first party compulsory coverage specific to the state or jurisdiction in which a ride originated regardless of where that covered "auto" is registered or principally garaged.

The following definitions are added to **SECTION V – DEFINITIONS**

**O.** "Rideshare Driver" means an individual that is operating a motor vehicle in connection with the use of the "UberPartner application".

**P.** "Transportation Network Company" (or TNC) means an entity which uses a proprietary digital network to connect passengers to drivers for the purposes of providing transportation.

**Q.** "UberPartner application" means any smartphone application licensed by a subsidiary of Uber Technologies, Inc. which is utilized by a Rideshare Driver to receive requests for transportation from passengers.

**SECTION II – COVERED AUTOS LIABILITY COVERAGE, A. Coverage** is deleted and replaced with the following:

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who Is An Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(1)** The owner or anyone else from whom you hire or borrow a covered "auto".

This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

Case 4:21-cv-00507-BP   Document 1-1   Filed 07/19/21   Page 51 of 69

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**d.** "Rideshare Drivers" other than you and your employees are "insureds" given that such "Rideshare Drivers":

**(1)** Are using or operating a covered "auto" that you don't own, hire or borrow in your business or personal affairs; and

**(2)** Have entered into a contract to use the "UberPartner application" with one or more of the Named Insureds prior to the time of the "accident"; and

**(3)** Have accessed the "UberPartner application" using a log in credential issued by a Named Insured to such "Rideshare Driver" for their own use.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state in which a ride originated, we will:

**(1)** Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used; and

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of motor vehicles by the state or jurisdiction where the covered "auto" is being used at the time of the "accident";

provided the covered "auto" is located in one of the following territories at the time the "accident" occurred:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico; or

**(4)** Canada

We will not pay anyone more than once for the same elements of loss because of these extensions.

**SECTION II – COVERED AUTOS LIABILITY COVERAGE, C. Limit of Insurance** is deleted and replaced with the following:

Case 4:21-cv-00507-BP   Document 1-1   Filed 07/19/21   Page 52 of 69

Regardless of the number of "insureds", premiums paid, claims made or vehicles (other than covered "autos") involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

If more than one covered "auto" is involved in the same "accident", each "insured" operating or using a covered "auto" shall have a separate Limit of Insurance for Liability Coverage shown in the Declarations for such covered "auto".

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage Endorsement, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**SECTION IV – BUSINESS AUTO CONDITIONS, B. General Conditions, 5. Other Insurance** is deleted and replaced with the following:

**5. Other Insurance**

Coverage provided for "Rideshare Drivers" by this endorsement is primary with respect to any:

**a.** Personal auto insurance policy that includes the "Rideshare Driver" as an insured, unless the personal auto insurance policy specifically recognizes such "Rideshare Driver's" provision of transportation services in connection with a "transportation network company" and clearly provides coverage for the "loss"; or

**b.** Personal auto insurance policy that includes the "auto" driven by the "Rideshare Driver" as a covered "auto", unless the personal auto insurance policy specifically recognizes the use of the "auto" in connection with a "transportation network company" and clearly provides coverage for the "loss" at the time of loss.

Coverage provided for "Rideshare Drivers" by this endorsement is excess over any:

**a.** Personal auto insurance policy that specifically recognizes the use of the "auto" in connection with a "transportation network company" and clearly provides coverage for the "loss"; or

**b.** Business auto insurance policy that includes the "Rideshare Driver" as an insured and includes the "auto" driven by the "Rideshare Driver" as a covered "auto".

If no other policies described elsewhere in this endorsement exist or provide coverage, the coverage provided by this endorsement shall be primary.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MISSOURI CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Missouri, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following is added to **Supplementary Payments:**

Prejudgment interest awarded against the "insured" on the part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**B. Changes In Covered Autos Liability Coverage**

1. Paragraph **2.b.(4)** of the **Who Is An Insured** Provision in the Auto Dealers Coverage Form is replaced by the following:

    **(4)** Your customers. However, those customers are "insureds" up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

2. Paragraph **1.b.** of the **Who Is An Insured** Provision in the Business Auto and Motor Carrier Coverage Forms and Paragraph **2.b.** of the **Who Is An Insured** Provision in the Auto Dealers Coverage Form are changed by adding the following:

    **(6)** If you are an individual, any member of your household, other than your spouse, who is related to you by blood or adoption, including a ward or foster child, who owns an "auto".

3. If your business is other than selling, repairing or servicing "autos", the **Care, Custody Or Control** Exclusion does not apply to "property damage" to or "covered pollution cost or expense" involving an "auto" loaned to you, with or without consideration, by a person engaged in the business of selling, repairing or servicing "autos" as a temporary substitute for an "auto" you own.

**C. Changes In Conditions**

1. The **Appraisal For Physical Damage Loss** Condition is replaced by the following:

    If you and we disagree on the amount of "loss", both parties may agree to an appraisal of the "loss" and to be bound by the results of that appraisal. If both parties so agree, then each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    **a.** Pay its chosen appraiser; and

    **b.** Bear the other expenses of the appraisal and umpire equally.

    If we submit to an appraisal, we will still retain our right to deny the claim.

2. The following is added to the **Concealment, Misrepresentation And Fraud** Condition:

    With respect to Covered Autos Liability Coverage, this condition only applies in excess of the minimum limits of liability required by the Missouri Financial Responsibility Laws.

CA 01 65 07 16 © Insurance Services Office, Inc., 2015 **Page 1 of 2**

3. If your business is other than selling, repairing or servicing "autos", the following is added to the **Other Insurance** Condition in the Business Auto Coverage Form and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form:

Covered Autos Liability Coverage is primary for any temporary substitute for an "auto" you own if the substitute "auto" is operated by an "insured" and is loaned to you, with or without consideration, by a person engaged in the business of selling, repairing or servicing "autos".

4. If your business is selling, repairing or servicing "autos", the following is added to the **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form:

Covered Autos Liability Coverage is excess for any "auto" you own if operated by a customer to whom you have loaned the "auto", with or without consideration, as a temporary substitute for an "auto" owned by the customer.

**D.** The following provision is added:

**Missouri Property And Casualty Insurance Guaranty Association Coverage Limitations**

1. Subject to the provisions of the Missouri Property and Casualty Insurance Guaranty Association Act (to be referred to as the Act), if we are a member of the Missouri Property and Casualty Insurance Guaranty Association (to be referred to as the Association), the Association will pay claims covered under the Act if we become insolvent.

2. The Act contains various exclusions, conditions and limitations that govern a claimant's eligibility to collect payment from the Association and affect the amount of any payment. The following limitations apply subject to all other provisions of the Act:

   **a.** Claims covered by the Association do not include a claim by or against an "insured" of an insolvent insurer, if the "insured" has a net worth of more than $25 million on the later of the end of the "insured's" most recent fiscal year or the December thirty-first of the year next preceding the date the insurer becomes insolvent; provided that an "insured's" net worth on such date shall be deemed to include the aggregate net worth of the "insured" and all of its affiliates as calculated on a consolidated basis.

   **b.** Payments made by the Association for covered claims will include only that amount of each claim which is less than $300,000.

   However, the Association will not:

   **(1)** Pay an amount in excess of the applicable Limit of Insurance of the policy from which a claim arises; or

   **(2)** Return to an "insured" any unearned premium in excess of $25,000.

   These limitations have no effect on the coverage we will provide under this policy.

 © Insurance Services Office, Inc., 2015 CA 01 65 07 16

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MISSOURI UNINSURED MOTORISTS COVERAGE

For a covered "auto" registered or principally garaged in, or "auto dealer operations" conducted in, Missouri, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** Rasier LLC, Rasier-CA LLC, Rasier-DC LLC, Rasier-PA LLC |
| **Endorsement Effective Date:** 3/1/2016 |

**SCHEDULE**

| | |
|---|---|
| **Limit Of Insurance:** $ 1,000,000 | **Each "Accident"** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. No judgment for damages arising out of a "suit" brought against the owner or operator of an "uninsured motor vehicle" is binding on us unless we have:

   a. Received reasonable notice of the pendency of the "suit" resulting in the judgment; and

   b. Had a reasonable opportunity to protect our interests in the "suit".

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members". However, this does not include any "family member", other than the Named Insured's spouse, who owns an "auto".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

© Insurance Services Office, Inc., 2013

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

**1.** Any claim settled without our consent, if the settlement or judgment prejudices our right to recover payment. However, this exclusion applies only to the extent that the limits of liability for Uninsured Motorists Coverage exceed the minimum limits of liability required by the financial responsibility law of Missouri.

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** "Bodily injury" sustained by any person while "occupying" or struck by any vehicle owned by the Named Insured or, if the Named Insured is an individual, any "family member", that is not a covered "auto". However, this exclusion does not apply to an individual Named Insured.

**4.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**5.** Punitive or exemplary damages.

**6.** "Bodily injury" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

**1.** Regardless of the number of "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage shown in the Schedule or Declarations.

However, if "bodily injury" to which this coverage applies is sustained by any person other than an individual Named Insured or any "family member", the Limit of Insurance shown in the Schedule or Declarations for this coverage is also the most we will pay regardless of the number of covered "autos".

**2.** If there are two or more covered "autos" that are not trailers, and "bodily injury" is sustained by an individual Named Insured or any "family member", our Limit of Insurance for any one "accident" is the sum of the limits applicable to each covered "auto" which is not a "trailer". Subject to this maximum limit of liability for all damages:

**a.** The most we will pay for all damages sustained in such "accident" by an "insured" other than an individual Named Insured or any "family member" is that "insured's" pro rata share of the limit shown in the Schedule or Declarations for this coverage at the time of the "accident".

**b.** An individual Named Insured or any "family member" who sustains "bodily injury" in such "accident" will also be entitled to a pro rata share of the limit described in Paragraph **a.** above.

A person's pro rata share is the proportion that that person's damages bears to the total damages sustained by all "insureds".

**3.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form attached to this Coverage Part.

We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible. However, this does not include any amounts paid or payable under medical payments or any workers' compensation, disability benefits or similar law.

## E. Changes In Conditions

The Conditions are changed for Missouri Uninsured Motorists Coverage as follows:

**1.** The reference in **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

© Insurance Services Office, Inc., 2013

**CA 21 04 10 13**

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

   **a.** Promptly notify the police if a hit-and-run driver is involved; and

   **b.** Promptly send us copies of the legal papers if a "suit" is brought.

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

4. The following condition is added:

   **Arbitration**

   **a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", both parties may agree to an arbitration and to be bound by the results of that arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated. If both parties so agree, then each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

   **b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

5. **Two Or More Coverage Forms Or Policies Issued By Us** does not apply.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   **a.** For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

   **b.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   **c.** That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must either:

      **(1)** Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

      **(2)** Cause "bodily injury" to an "insured" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying". The facts of the "accident" must be proved. We may request supporting evidence beyond the testimony of a person making a claim under this or any similar coverage to support the validity of such claim.

   However, "uninsured motor vehicle" does not include any vehicle:

   **a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law; or

   **b.** Designed for use mainly off public roads while not on public roads.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 1

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| CA436100MO-01 | 3/1/2016 12:01 AM Standard Time at the address of the Named Insured | James River Insurance Company |
| **NAMED INSURED** Rasier LLC, Rasier-CA LLC, Rasier-DC LLC, Rasier-PA LLC | | **AUTHORIZED REPRESENTATIVE** Richard J. Schmitzer |
| **COVERAGE PARTS AFFECTED** ALL COVERAGE PARTS | | |

### CHANGES

The Business Auto Declarations is amended to read:

| Personal Injury Protection (Or Equivalent No-fault Coverage) | Not Covered | Not Covered | $ Not Covered |
|---|---|---|---|
| **Uninsured Motorists (UM)** | 10 | $ 1,000,000 | $ Included |

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

*Richard J Schmitzer*

Authorized Representative Signature

IL1201 04-03

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number 2

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| CA436100MO-01 | 3/1/2016  12:01 AM Standard Time at the address of the Named Insured | James River Insurance Company |
| **NAMED INSURED** Rasier LLC, Rasier-CA LLC, Rasier-DC LLC, Rasier-PA LLC | | **AUTHORIZED REPRESENTATIVE** Richard J. Schmitzer |
| **COVERAGE PARTS AFFECTED** ALL COVERAGE PARTS | | |

### CHANGES

The following endorsement is added:

CA3104 10 13  Missouri Underinsured Motorists Coverage

The Business Auto Declarations is amended to read:

| Personal Injury Protection (Or Equivalent No-fault Coverage) | Not Covered | Not Covered | $ Not Covered |
|---|---|---|---|
| **Uninsured Motorists (UM)** | 10 | $ 1,000,000 | $ Included |
| **Underinsured Motorists (UIM)** | 10 | $ 1,000,000 | $ Included |

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

*Richard J Schmitzer*

Authorized Representative Signature

IL1201 04-03
11/17/16  lb

Page 1 of 1

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**COMMERCIAL AUTO**
**CA 31 04 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MISSOURI UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Missouri, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured: Rasier LLC, Rasier-CA LLC, Rasier-DC LLC, Rasier-PA LLC** |
| **Endorsement Effective Date: 3/1/2016** |

**SCHEDULE**

| |
|---|
| **Limit Of Insurance: $ 1,000,000** **Each "Accident"** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle".

2. We will pay under this coverage only if Paragraph **a.** or **b.** below applies:

   **a.** The limit of any applicable liability bonds or policies has been exhausted by payment of judgments or settlements; or

   **b.** A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle", and we:

   **(1)** Have been given prompt written notice of such tentative settlement; and

   **(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

© Insurance Services Office, Inc., 2012 **Page 1 of 4**

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

**1.** An individual, then the following are "insureds":

  **a.** The Named Insured and any "family members". However, this does not include any "family member", other than the Named Insured's spouse, who owns an "auto".

  **b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

  **c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

  **a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

  **b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

**1.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**2.** "Bodily injury" sustained by any person while "occupying" or struck by any vehicle owned by the Named Insured or if the Named Insured is an individual, any "family member", that is not a covered "auto". However, this exclusion does not apply to an individual Named Insured.

**3.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**4.** Punitive or exemplary damages.

**5.** "Bodily injury" arising directly or indirectly out of:

  **a.** War, including undeclared or civil war;

  **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

  **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Underinsured Motorists Coverage shown in the Schedule or Declarations.

**2.** We will not pay for any element of "loss" if a person is entitled to receive duplicate payment under any of the following or similar law:

  **a.** Workers' compensation law; or

  **b.** Disability benefits law.

**3.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and this policy's Covered Autos Liability Coverage.

**4.** We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

## E. Changes In Conditions

The Conditions are changed for Missouri Underinsured Motorists Coverage as follows:

**1.** **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

  **a.** The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

  **b.** Subject to all other provisions of this policy, including but not limited to:

    **(1)** Exclusion **C.2.** of this endorsement;

    **(2)** Paragraph **D.** Limit Of Insurance of this endorsement;

    **(3)** Paragraph **E.1.a.** of the Other Insurance Condition of this endorsement; and

Case 4:21-cv-00507-RP   Document 1-1   Filed 07/19/21   Page 62 of 69

**(4)** The Two Or More Coverage Forms Or Policies Issued By Us Condition of this policy;

any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible underinsured motorists insurance providing coverage on a primary basis.

**c.** If the coverage under this Coverage Form is provided:

**(1)** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

**(2)** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver is involved;

**b.** Promptly send us copies of the legal papers if a "suit" is brought; and

**c.** A person seeking Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of "the "underinsured motor vehicle" and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

**3. Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights do not apply under this provision with respect to damages caused by an "accident" with an "underinsured motor vehicle" if we:

**a.** Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

**b.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**a.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

**b.** We also have a right to recover the advanced payment.

**4.** The following condition is added:

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", both parties may agree to an arbitration and to be bound by the results of that arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated. If both parties so agree, then each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

Electronically Filed - Jackson - Kansas City - June 01, 2021 - 04:14 PM

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Underinsured motor vehicle" means a land motor vehicle or "trailer" for which a "bodily injury" liability bond or policy applies at the time of an "accident", but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not include any vehicle:

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law; or

**b.** Designed for use mainly off public roads while not on public roads.

© Insurance Services Office, Inc., 2012                                    **CA 31 04 10 13**



# IN THE 16TH JUDICIAL CIRCUIT **COURT, JACKSON COUNTY, MISSOURI**

| | |
|---|---|
| Judge or Division:<br>JUSTINE E DEL MURO | **Case Number: 2116-CV11792** |
| Plaintiff/Petitioner:<br>SHELLY LOCKETT<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>THOMAS PAUL BRYANT<br>BRYANT LAW FIRM<br>1 TOWN SQUARE<br>NORTH KANSAS CITY, MO 64116 |
| Defendant/Respondent:<br>JAMES RIVER INSURANCE COMPANY | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Pers Injury-Other | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** **JAMES RIVER INSURANCE COMPANY**
                                    **Alias:**
**DIR DEPARTMENT OF INSURANCE**
**301 W HIGH ST ROOM 530**
**JEFFERSON CITY, MO 65101**

*COURT SEAL OF*



*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

03-JUN-2021
Date                                                        Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
_____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____                _____
Printed Name of Sheriff or Server                        Signature of Sheriff or Server
**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*           Subscribed and sworn to before me on _____ (date).

My commission expires: _____        _____
                                          Date                                    Notary Public

| **Sheriff's Fees** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7/2018) SM30 (JAKSMCC) *For Court Use Only:* Document Id # 21-SMCC-5106  1  of  1  Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 94.20; 506.120 – 506.140, and 506.150 RSMo
Case 4:21-cv-00507-BP   Document 1-1   Filed 07/19/21   Page 65 of 69

## SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.

Circuit Court of Jackson County

6/2020

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

SHELLY LOCKETT,

          **PLAINTIFF(S),**                **CASE NO.** 2116-CV11792

VS.                                              **DIVISION 4**

JAMES RIVER INSURANCE COMPANY,

          **DEFENDANT(S).**

## NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE
## AND ORDER FOR MEDIATION

---

      NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable **JUSTINE E DEL MURO** on **12-NOV-2021** in **DIVISION 4** at **08:30 AM.** All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

      A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

      At the Case Management Conference, counsel should be prepared to address at least the following:

      a.      A trial setting;

      b.      Expert Witness Disclosure Cutoff Date;

      c.      A schedule for the orderly preparation of the case for trial;

      d.      Any issues which require input or action by the Court;

      e.      The status of settlement negotiations.

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

/S/ JUSTINE E DEL MURO
JUSTINE E DEL MURO, **Circuit Judge**

Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
THOMAS PAUL BRYANT, BRYANT LAW FIRM, 1 TOWN SQUARE, NORTH KANSAS CITY, MO 64116

Defendant(s):
JAMES RIVER INSURANCE COMPANY

Dated: 03-JUN-2021                    MARY A. MARQUEZ
                                      Court Administrator

# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JUSTINE E DEL MURO | **Case Number: 2116-CV11792** |
| Plaintiff/Petitioner:<br>SHELLY LOCKETT<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>THOMAS PAUL BRYANT<br>BRYANT LAW FIRM<br>1 TOWN SQUARE<br>NORTH KANSAS CITY, MO 64116 |
| Defendant/Respondent:<br>JAMES RIVER INSURANCE COMPANY | Court Address:<br>415 E 12th |
| Nature of Suit:<br>CC Pers Injury-Other | KANSAS CITY, MO 64106<br><br>(Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  **JAMES RIVER INSURANCE COMPANY**
Alias:
**DIR DEPARTMENT OF INSURANCE**
**301 W HIGH ST ROOM 530**
**JEFFERSON CITY, MO 65101**

**COURT SEAL OF**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

03-JUN-2021
Date

Clerk

**JACKSON COUNTY**

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.
☑ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
Deborah Lee  (name) Designee  (title).
☐ other _____.

Served at 301 W. High St, Rm 530  (address)
in Cole  (County/City of St. Louis), MO, on 06/21/2021  (date) at 2/11 PM  (time).

_____
Printed Name of Sheriff or Server

By Deputy Sheriff lauro 48
Signature of Sheriff or Server

*(Seal)*

**Must be sworn before a notary public if not served by an authorized officer:**
Subscribed and sworn to before me on _____  (date).

My commission expires: _____
Date

_____
Notary Public

| **Sheriff's Fees** | |
|---|---|
| Summons | $ _____ |
| Non Est | $ _____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $ _____ ( _____ miles @ $. _____ per mile) |
| **Total** | $ _____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7/2018) SM30 (JAKSMCC) *For Court Use Only:* **Document Id # 21-SMCC-5106**  1  of  1 Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo